**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**NAIA TRUST, GALE M. PARR, and**
**PAMELA A. GRAY,**

        **Plaintiffs,**

**-vs-**                                    **Case No. 6:09-cv-340-Orl-28KRS**

**VOLUSIA COUNTY, FLORIDA,**

        **Defendant.**
_____

# ORDER

Plaintiffs, NAIA Trust ("NAIAT"), Gale M. Parr, and Pamela A. Gray, bring the instant action against Volusia County, Florida ("the County") seeking declaratory and injunctive relief. Plaintiffs contend that a County ordinance violates several of their rights under the U.S. Constitution and the Florida Constitution. The case is currently before the Court on the County's Motion to Dismiss (Doc. 6) and Plaintiffs' Response in Opposition (Doc. 8) thereto.

## I. Background

In the Complaint (Doc. 1), Plaintiffs bring several challenges to Volusia County Ordinance No. 2008-18, which was enacted on August 21, 2008 and which amended several sections of Chapter 14, Article II of the County Code of Ordinances ("Code"). (See Ordinance 2008-18, Attach. to Doc. 1). Chapter 14, Article II, defines "hobby breeders" of dogs and cats and sets forth requirements for hobby breeders and hobby breeder facilities. As amended by Ordinance No. 2008-18, sections of Chapter 14, Article II provide in part: that an annual license is required for establishment or maintenance of a hobby breeder

facility and that such license "shall be issued only after an inspection that determines that the minimum requirements and standards, as set forth herein, have been met," § 14-56(a)(1); that only one breed of dog or cat may be kept at any hobby breeder facility, § 14-56(a)(3); that all dogs and cats at a facility must be identifiable by either tattoo or implantable device, id.; that if a new owner of a dog or cat becomes unable or unwilling to care for it, the hobby breeder must assist in placing the animal and if a placement cannot be found within six months the hobby breeder must accept return of the animal and be responsible for its care, § 14-56(a)(4); that an owner of a hobby breeder facility with indoor facilities must live on the premises, § 14-56(b)(4); that as a condition of issuance of a license as a hobby breeder, a hobby breeder must consent to an inspection of the animals and the premises where they are kept "at any reasonable time," § 14-56(c); and that "[u]pon receipt of information of violation of this section, the animal control division may issue a notice of revocation to a license holder," id.

The Complaint alleges that Plaintiffs Parr and Gray are hobby breeders as defined by the Code. (Compl. ¶¶ 7, 10).[1] Plaintiff NAIAT is alleged to be a nonprofit corporation "established to promote responsible animal care and ownership . . . and the enactment of reasonable laws, policies[,] and regulations to protect animals and the people who care for them." (Id. ¶ 3). Among the members of NAIAT are some hobby breeders, including Plaintiffs Parr and Gray. (Id. ¶¶ 4, 6, & 9).

---

[1]The Code defines "hobby breeder" as "a person other than a pet dealer who shelters, breeds[,] or trains a single breed of dog or cat to conform to an approved standard of competition." Code § 14-31.

Plaintiffs allege that, as hobby breeders, they are subject to the requirements of Ordinance No. 2008-18 and face "a real and immediate threat of prosecution and/or license revocation." (Compl. ¶ 23).[2] Plaintiffs bring six counts in their Complaint, alleging that Ordinance No. 2008-18 violates several federal and state constitutional provisions and that the subject matter of the ordinance has been preempted by the Florida legislature. The County has moved to dismiss the Complaint, alleging that there is no "case or controversy" presented because Plaintiffs have not suffered an injury in fact and do not face a threat of immediate injury.

## II. Discussion

While the County couches its motion to dismiss in terms of whether the Plaintiffs have standing to bring this suit, concerns of ripeness are also involved here. As one court has aptly explained:

> The doctrines of standing and ripeness are closely related, and in cases like this one perhaps overlap entirely. Both doctrines stem from Article III's requirement that federal courts have jurisdiction only over "cases and controversies." It is sometimes argued that standing is about *who* can sue while ripeness is about *when* they can sue, though it is of course true that if no injury has occurred, the plaintiff can be told either that *she* cannot sue, or that she cannot sue *yet*.

Smith v. Wis. Dep't of Agric., Trade & Consumer Prot., 23 F.3d 1134, 1141 (7th Cir. 1994).

In order to have standing to sue, an individual must have "suffered 'injury in fact,'" the injury must be "'fairly traceable' to the actions of the defendant," and the injury must be likely

---

[2]In one of its paragraphs, the Complaint uses the term "Plaintiff" in the singular in connection with this allegation. (Compl. ¶ 23). However, two paragraphs later, the Complaint refers to "Plaintiffs" as being threatened with "revocation of their licenses." (Id. ¶ 25).

-3-

to "be redressed by a favorable decision." Bennett v. Spear, 520 U.S. 154, 162 (1997) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). Similarly, "[t]he 'basic rationale [behind the ripeness doctrine] is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" Roark & Hardee LP v. City of Austin, 522 F.3d 533, 544 (5th Cir. 2008) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967)) (second alteration in original). "[A] ripeness inquiry is often required when," as here, "a party is seeking *pre-enforcement* review of a law or regulation." Id.

"'A court should dismiss a case for lack of "ripeness" when the case is abstract or hypothetical.'" Id. at 545 (quoting Monk v. Huston, 340 F.3d 279, 282 (5th Cir. 2003)). "The Supreme Court has expounded that [t]he key considerations [for ripeness] are the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Id. (citation and internal quotation omitted). "'A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required.'" Id. (quoting Monk, 340 F.3d at 282). "'[E]ven where an issue presents purely legal questions, the plaintiff must show some hardship in order to establish ripeness.'" Id. (quoting Cent. & Sw. Servs. v. EPA, 220 F.3d 683, 690 (5th Cir. 2000)). "'[W]here a regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance, hardship has been demonstrated.'" Id. (quoting Suitum v. Tahoe Reg'l Planning Agency, 520 U.S. 725 (1997)) (alteration in original).

Although there may be a ripe controversy involved in the instant case, it is not clear

from the Complaint whether this is so.  Plaintiffs assert that they face "license revocation," but nowhere do they actually assert that they are licensed as hobby breeders—whether under a prior version of the Code or otherwise—or that they have applied for and been denied a license as a hobby breeder under the current Code.  Moreover, some of the allegations of the Complaint involve portions of the County Code that were not amended by Ordinance No. 2008-18, and it is thus difficult to gauge whether an actual enforcement threat looms or whether any violation has gone on for some time without any action being taken against Plaintiffs by the County.  Plaintiffs also fail to allege that the Ordinance requires "an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance" as described in City of Austin.  The lack of a more detailed description of the activities of Plaintiffs that allegedly puts them in fear of being found in violation is problematic.

Moreover, it is unclear whether the Complaint's "license revocation" allegations pertain to all Plaintiffs, one Plaintiff, or just the individual Plaintiffs.  Paragraph 23 uses "Plaintiff" in the singular, and the Court is unsure as to which Plaintiff is the subject of the paragraph.  It is also not clear whether Plaintiff NAIAT is alleging that it is faced with license revocation itself or whether it is merely asserting the rights of its members.[3]

---

[3]An organization or association can have standing to sue on its own behalf, on behalf of its members, or both.  "An organization has standing to sue on its own behalf if it meets the same standing test that applies to individuals." Ass'n of Cmty. Orgs. for Reform Now v. Fowler, 178 F.3d 350, 356 (5th Cir. 1999).  On the other hand, "[a]n association has standing to bring suit on behalf of its members when its members would have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires individual members' participation in the lawsuit." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 169

In light of these shortcomings of the Complaint, the County's Motion to Dismiss will be granted. However, because it is not clear that Plaintiffs lack standing or that the matter is not ripe, Plaintiffs will be granted an opportunity to amend their Complaint to attempt to remedy the pleading deficiencies and to satisfy the Court that a justiciable "case or controversy" is presented.

### III. Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** that the Motion to Dismiss (Doc. 6) filed by Defendant is **GRANTED without prejudice**. The Complaint (Doc. 1) is **DISMISSED without prejudice**. Plaintiffs may file an amended complaint **on or before Friday, October 23, 2009**.

**DONE** and **ORDERED** in Orlando, Florida this 8th day of October, 2009.

                                                                                    _____
                                                                                    JOHN ANTOON II
                                                                                    United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party

---

(2000); see also Sierra Club v. Morton, 405 U.S. 727, 739 (1972) ("[A]n organization whose members are injured may represent those members in a proceeding for judicial review.").